# In the United States Court of Federal Claims

No. 17-359 L
(Filed: December 3, 2018)

```
**************************************
                                     *
WHITE MOUNTAIN APACHE TRIBE,         *
                                     *
            Plaintiff,               *
                                     *
      v.                             *
                                     *
THE UNITED STATES,                   *
                                     *
            Defendant.               *
                                     *
**************************************
```

## OPINION AND ORDER

**DAMICH,** Senior Judge.

On March 15, 2017, Plaintiff, White Mountain Apache Tribe ("Tribe"), filed a Complaint alleging that the Government breached fiduciary duties owed to the Tribe through the mismanagement of trust funds, non-monetary trust assets, and dam maintenance and repair obligations. On July 14, 2017, the Government filed a partial Motion to Dismiss, alleging that portions of Count I – Mismanagement of Trust Funds, and portions of Count II – Mismanagement of Non-Monetary Trust Assets, were time barred, and that Count III – Mismanagement of Dam Maintenance and Repair, failed to state a claim upon which relief could be granted.

On January 5, 2018, this Court issued an Opinion and Order granting-in-part and denying-in-part the Defendant's Motion to Dismiss. ECF No. 22. As relevant here, the Court denied the Government's Motion to Dismiss for failure to state a claim relating to Count III, holding that the Indian Dam Safety Act of 1994 ("IDSA"), "created mandatory duties on the part of the Government through the Secretary of the Interior regarding maintenance and repair of the dams" on Plaintiff's Reservation. In addition, the Court denied the Government's Motion to Dismiss Count I, granted-in-part the portion concerning forestry mismanagement and grazing of Count II, and denied-in-part the Motion as to the remaining portions of Count II.

On February 2, 2018, Plaintiff filed a Motion for Reconsideration concerning the Court's partial dismissal of Count II. On June 19, 2018, the Court granted-in-part Plaintiff's Motion for Reconsideration concerning dismissal of the forestry

mismanagement portions of Count II, and denied-in-part reconsideration relating to other aspects of Count II.

On October 4, 2018, nine months after the Court denied the Government's Motion to Dismiss for failure to state a claim relating to Count III,[1] the Government filed a Motion to Certify Interlocutory Appeal, seeking certification of two issues concerning Count III raised in the Court's January 5, 2018 Order:

1.  Whether the Indian Dam Safety Act of 1994 ("IDSA"), 25 U.S.C. §§ 3801–3804, creates a mandatory duty to repair all dams located on Indian reservations by a date certain; and
2.  Whether a breach of any mandatory duty imposed by the IDSA to repair all dams located on Indian reservations is compensable through money damages.

United States' Motion to Certify Interlocutory Appeal, ECF No. 43, at 1 (Oct. 4, 2018) ("Def. Mot.").[2]  On October 30, 2018, Plaintiff filed a Response.  Pl.'s Resp., ECF No. 46.  On November 20, 2018, the Government Replied.  Def.'s Reply, ECF No. 47.  This matter is now fully briefed and ripe for decision.

For the reasons set forth below, the Court **DENIES** the Government's Motion to Certify Interlocutory Appeal.

## I.      DISCUSSION

Section 1292(d)(2) of Title 28 governs interlocutory appeal and provides, in relevant part, that:

> [W]hen any judge of the United States Court of Federal Claims, in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

---

[1] This Court notes that the Motion for Reconsideration, which was decided on June 19, 2018, did not concern Count III.

[2] In the Joint Proposed Litigation Schedule filed on July 30, 2018, ECF No. 42, the parties advised that the Government was considering requesting interlocutory appeal of aspects of the Court's January 5, 2018 Order and that the litigation schedule adopted by the Court on February 26, 2018, ECF No. 31, remained unchanged.

The decision whether to permit an interlocutory appeal is committed to the "sound discretion" of the judge who entered the order. *See Starr Int'l Co. v. United States*, 112 Fed. Cl. 601, 603 (2013) (quoting *Petro-Hunt, LLC v. United States*, 91 Fed. Cl. 447, 452 (2010)). Courts have long understood that "[i]nterlocutory appeals are reserved for exceptional or rare cases and should be authorized only with great care as to avoid unnecessary and piecemeal litigation." *Id.* (quoting *Jaynes v. United States*, 69 Fed. Cl. 450, 460 (2006) (internal citations omitted)); *see also Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996) ("[r]outine resort to [section 1292] would hardly comport with Congress' design to reserve interlocutory review for 'exceptional' cases while generally retaining for the federal courts a firm final judgment rule.").[3]

Accordingly, to succeed in its motion, the Government must convince the Court that: (1) there is a controlling question of law; (2) there is a substantial ground for a difference of opinion on the controlling question of law; and (3) termination of the litigation might be materially advanced by an immediate appeal. 28 U.S.C. § 1292(d)(2).

## A. Controlling Question of Law

Under section 1292, "[q]uestions are 'controlling' when they 'materially affect issues remaining to be decided in the trial court.'" *Marriot Int'l Resorts, L.P. v. United States*, 63 Fed. Cl. 144, 145 (2004) (citation omitted); *Sokaogon Gaming Enterprise Corp. v. Tushie-Montgomery Associates, Inc.*, 86 F.3d 656, 659 (7th Cir. 1996) ("A question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so.").

The Government believes that the Court's holding that "through the IDSA Congress created mandatory duties on the part of the Government through the Secretary of the Interior regarding maintenance and repair of the dams on the Reservations," is controlling because "[d]ismissal of the dam safety claim would fully and finally resolve one of Plaintiff's claims, which plainly would affect the course of the litigation and accelerate its disposition." Def.'s Mot. at 5.

Broadly speaking, as the Court of Appeals for the Federal Circuit might dismiss Count III, the Government is correct. But, looking at the questions specifically proffered by the Government for interlocutory appeal, this Court believes that the Government mischaracterizes the Court's holding in its January 5, 2018 Order. In that order, the Court merely decided that the Plaintiff had adequately pled the dam maintenance claim so as to survive a motion to dismiss. The Court did not, as the Government contends, hold that "a breach of *any* mandatory duty imposed by the IDSA to repair *all dams*

---

[3] The language of section 1292(d)(2) "is virtually identical to 28 U.S.C. § 1292(b) . . . which governs interlocutory review by other courts of appeals." *United States v. Connolly*, 716 F.2d 882, 883 n. 1 (Fed. Cir. 1983) (en banc). "Because the operative language is identical, the legislative history and case law governing the interpretation of section 1292(b) is persuasive in reviewing motions for interlocutory appeal under section 1292(d)(2)." *Abbey v. United States*, 89 Fed. Cl. 425, 429 (2009).

located on Indian reservations is compensable through money damages," and certainly did not hold that IDSA "creates a mandatory duty to repair all dams located on Indian reservations by *a date certain*." *See* Def.'s Mot. at 1 (emphasis added).

Despite the deficiency of the questions proffered by the Government, one of the Government's arguments in its supporting brief does seem to have some merit. According to the Government, any mandatory duties imposed by IDSA cannot be fiduciary ones because an award of money damages would enrich the Tribe, but would do nothing to improve the safety of dams on Indian reservations. *See* Def.'s Mot. at 13–14; Def.'s Reply at 15–19. In other words, should the Plaintiff ultimately prevail, it is highly unlikely that the damage award would be used to conduct repairs on the dams, even if permitted by the Government. But Plaintiff may be able to identify other damages once discovery is complete. In its claim relating to the improper repair of the Davis Dam, for example, Plaintiff alleges other damages, namely, lost tourism revenue, lost income from the sale of hunting and fishing permits, and mitigation costs. Compl. at 18–19.

Furthermore, the mere fact that a damage award may not directly effectuate a statute's purpose does not mean that the statute is not money-mandating. In spent nuclear fuel cases, for example, Congress provided that the United States Government would dispose of radioactive nuclear waste generated by utility companies during the energy production process. *See* Nuclear Waste Policy Act of 1982, 42 U.S.C. §§ 10101–10270. Due to the Government's inability to comply with this mandate, utility companies receive periodic damage awards for housing the waste at their facilities. *See e.g.*, *Dairyland Power Co-Op. v. United States*, 645 F.3d 1363 (Fed. Cir. 2011). Clearly such an award does little, if anything, to compel the Government to effectuate the safe disposal of nuclear waste.

In any event, there is no need to address the Government's concern in this regard further, as the Court's January 5, 2018 Order merely held that the Plaintiff had made a sufficient showing to avoid dismissal for failure to state a claim. This case is still in its infancy and should the Government wish to raise the issue again, the Court would be willing to entertain a dispositive motion on Count III after discovery on that Count is complete.

## B.  Substantial Difference of Opinion

The second prong of section 1292 requires that there be "substantial grounds for difference of opinion" with respect to the Court's order. *See* 28 U.S.C. § 1292(d)(2). Courts have found "substantial grounds for difference of opinion" where there are "two different, but plausible, interpretations of a line of cases," "splits among circuit courts, an intracircuit conflict or a conflict between an earlier circuit precedent and a later Supreme Court case, or . . . a substantial difference of opinion among the judges of [the same] court." *Klamath Irr. Dist. v. United States*, 69 Fed. Cl. 160, 163 (2005) (internal citations omitted). Further, while "issues of first impression may satisfy the 'substantial ground for difference of opinion' criterion . . . [a]n issue of first impression, standing alone, does not establish a substantial ground for difference of opinion." *Kislev Partners v. United*

*States*, 84 Fed. Cl. 378, 385 (2008) (quoting *American Management Systems, Inc. v. United States*, 57 Fed. Cl. 275, 277 (2003)).

Here, the Government believes that this prong is met because: (1) "[w]hether the IDSA establishes money-mandating fiduciary duties is an issue of first impression"; (2) "[t]he United States' argument that IDSA does not create mandatory duties is well-supported"; and (3) "[a]ny mandatory duties in the IDSA are not fiduciary duties." Def.'s Mot. at 6–10.

The Court disagrees.  First, although the issue of whether the IDSA imposes any money-mandating fiduciary duty may be one of first impression, it is one of pure statutory interpretation, which the Court of Federal Claims and trial courts in all jurisdictions routinely address in the first instance, subject to de novo review. *See Weddel v. Secretary of Dept. of Health and Human Servs.*, 23 F.3d 388, 391 (Fed. Cir. 1994). Other than being an issue of first impression, the Government has pointed to nothing "exceptional or rare" about this case sufficient to warrant interlocutory review. *See Starr Int'l Co. v. United States*, 112 Fed. Cl. 601, 603 (2013).  Second, the Government's own belief that its position is "well-supported" does not constitute a "substantial difference of opinion." *See Kowalski v. Anova Food, LLC*, 958 F.Supp. 2d 1147, 1165 (D. Haw. 2013) ("A party's strong disagreement with the Court's ruling is not sufficient . . . ."); *Thorndike v. United States*, 72 Fed. Cl. 580, 585 (2006) ("A difference of interpretation among the parties, however, does not [constitute a substantial difference of opinion].").  Were this the standard, every disgruntled litigant would seek interlocutory review from an adverse ruling, thereby eviscerating the firm final judgment rule. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996).

## C.  Material Advancement of Proceedings

The final prong of section 1292 requires that immediate appeal "materially advance" the ultimate termination of the litigation. 28 U.S.C. § 1292(d)(2).  Whether this prong is met "depends in large part on considerations of 'judicial economy' and the need to avoid 'unnecessary delay and expense' and 'piecemeal litigation.'" *Nebraska Public Power Dist. v. United States*, 74 Fed. Cl. 762, 764 (2006) (quoting *Coast Fed. Bank, FSB v. United States*, 49 Fed. Cl. 11, 14 (2001)).  Courts have long held that "[w]hen litigation will be conducted in substantially the same manner regardless of [the] decision, the appeal cannot be said to materially advance the ultimate termination of the litigation." *White v. Nix*, 43 F.3d 374, 378–79 (8th Cir. 1994) (citations omitted).

Discovery on Count III has not yet begun.  The Government maintains that "litigation of the IDSA claim will be complex, expensive, and time-consuming," and that discovery on this issue "will thus take many months, at least, and likely cost . . . several hundreds of thousands of dollars or more to present this issue at trial." Def.'s Mot. at 15. While this may be true, the same may be said about most cases that proceed to litigation. Moreover, as the Plaintiff points out, "the Tribe has limited resources and a limited number of attorneys to work on this case. Time spent on an IDSA appeal will take time away [from] proceeding with the litigation of the other claims." Pl.'s Resp. at 22.

Furthermore, while it is true that if the Federal Circuit held that IDSA did not "establish specific fiduciary or other duties," *United States v. Navajo Nation (Navajo II)*, 556 U.S. 287, 290 (2009), or that IDSA was not a "money-mandating" statute, *Mitchell v. United States*, 463 U.S. 206, 226 (1983), subject matter jurisdiction would be lacking as to Count III, such a holding would not "materially advance" the remaining issues before the Court. Aside from Count III, Plaintiff has Count I and portions of Count II remaining. According to the parties' Joint Proposed Litigation Schedule, "limited discovery on the jurisdictional issues" related to the Plaintiff's Count I and Count II claims will continue through April 15, 2019. A discovery schedule concerning all other issues, including Count III, will be submitted on April 30, 2019. *See* Joint Proposed Litigation Schedule, ECF No. 30 (Feb. 2, 2018), ECF No. 42 (July 30, 2018).[4]

Finally, although the Government noted that it was considering seeking interlocutory review in July 2018, it apparently did not consider the issue urgent enough to warrant a cross-motion when the Plaintiff sought reconsideration of the Count II issues in February 2018. Instead, the Government waited 9 months from the Court's January 5, 2018 Order to file this motion. As such, it does not appear that the Government is overly concerned with *immediate* review of the Count III issue. Moreover, the Court has already reconsidered its ruling concerning Count II. With the Government now seeking appellate review of the ruling on Count III, this case is dangerously close to becoming piecemeal litigation. Accordingly, the Government has failed to prove that "termination of the litigation might be materially advanced by an immediate appeal."

## II.   CONCLUSION

In sum, the Government has failed to meet its burden of convincing the Court that interlocutory appeal is warranted in this case. Therefore, the Government's Motion to Certify Interlocutory Appeal is hereby **DENIED**. Should the Government wish to renew its challenge as to Count III, the Court would be willing to entertain a dispositive motion on that Count after discovery is complete.

**IT IS SO ORDERED.**

s/ Edward J. Damich
EDWARD J. DAMICH
Senior Judge

---

[4] The Court adopted the parties' Joint Proposed Litigation Schedule on February 26, 2018. ECF No. 31. On July 30, 2018, the parties advised that the schedule remained unchanged despite the Court's reconsideration of Count II. *See* ECF No. 42.